# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER ON MOTIONS** |
| vs. | ) | |
| | ) | Case No. 3:17-cr-00206-02 and -05 |
| Jason Joey Berry and Xuan Cahn Nguyen, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | Case No. 3:18-cr-00054-01 |
| Steven Barros Pinto, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| Steven Barros Pinto, Jose Monteiro | ) | Case No. 3:20-cr-00011 |
| Pinto, Jr., and Eugenia A. Barros Pinto, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is the Government's motion for joinder of Defendants for trial. Doc. No. 355.[1] Defendants Steven Barros Pinto and Jason Joey Berry oppose joinder. Doc. No. 365; Case No. 3:17-cr-206, Doc. No. 191. Defendants Xuan Cahn Nguyen, Jose Monteiro Pinto, Jr., and Eugenia A. Barros Pinto have not responded to the motion. Steven Pinto separately moves for verification of his prevailing June 8, 2021 trial date. Doc. No. 354. The Government opposes that

---

[1] Identical motions appear in each of the three above-entitled cases. Unless indicated otherwise, the Court cites to the record in Case No. 3:18-cr-54.

request.  Doc. No. 356.  For the reasons below, the motion for joinder is denied, and the motion to verify the trial date is granted.

## I.   **BACKGROUND**

In January 2015, federal law enforcement initiated an investigation into a fentanyl overdose death in Grand Forks, North Dakota.  The investigation has since yielded charges against 34 individuals spanning multiple cases in this district.

According to the Government, the drug trafficking conspiracy responsible for the overdose death originated in Canada in 2013.  Berry and Daniel Vivas Ceron allegedly commanded the organization from Drummond Institution, a medium-security prison in Quebec, Canada.  Berry and Ceron purportedly obtained fentanyl and fentanyl analogues from Chinese suppliers and then coordinated distribution efforts.  The Government avers that Nguyen distributed controlled substances to individuals in the United States and abroad at Berry and Ceron's direction.  Nguyen also faces accusations of receiving illicit payments from the organization's drug transactions.

The Government contends that the organization bears responsibility for several fentanyl overdoses across the United States that resulted in serious bodily injury and death.  As alleged, these overdoses stemmed from Berry and Ceron conspiring to supply drugs to distribution networks operating in the United States.  Steven Pinto allegedly played a leadership role in one such organization located in Rhode Island.  Namely, the Government asserts that Steven Pinto collaborated with Anthony Gomes and others to procure fentanyl and fentanyl analogues from Berry and Ceron.

The grand jury returned an Indictment against Ceron in June 2015.  Case No. 2:15-cr-55, Doc. No. 1.  A separate Indictment against Berry, Nguyen, Gomes, and others followed in September 2017, which the grand jury superseded on January 18, 2018.  Case No. 3:17-cr-206,

Doc. No. 48.  The Superseding Indictment charges Berry and Nguyen with two drug conspiracy offenses resulting in serious bodily injury and death.  Nguyen is also charged with engaging in an international money laundering conspiracy.

Law enforcement arrested Steven Pinto on a criminal complaint on March 20, 2018.  Doc. No. 4.  The grand jury returned an Indictment against him and six others approximately one week later.  Doc. No. 5.  That Indictment has since been superseded twice, mostly recently on November 28, 2018.  Doc. No. 157.  The Second Superseding Indictment charges Steven Pinto with two drug conspiracy offenses resulting in serious bodily injury and death, engaging in a continuing criminal enterprise, two witness tampering offenses, obstruction of justice, and money laundering.  Count One alleges that Steven Pinto conspired with the Defendants in Case No. 3:17-cr-206, including Berry and Nguyen, to distribute fentanyl and fentanyl analogues.  Id. at 1.  The charging document also identifies Berry and Ceron as organizers and leaders of the conspiracy.  Id. at 10.  The Court ordered Steven Pinto detained pending trial on May 17, 2018.  Doc. No. 53.  He has remained in custody since his initial arrest.

On December 3, 2018, the Court granted the Government's motion to consolidate Steven Pinto and Ceron's cases for trial.  Doc. No. 166.  In doing so, the Court explained that both "Defendants are charged in the same conspiracy, the evidence and witnesses largely overlap, and joint trials will conserve scarce judicial resources."  Id. at 4.  Later obviating the need for a joint trial, Ceron pleaded guilty on July 12, 2019.  Doc. Nos. 106, 113.  Gomes and Steven Pinto's codefendants in Case No. 3:18-cr-54 have likewise entered guilty pleas.

While in pretrial custody, Steven Pinto allegedly disseminated discovery materials to friends and family members in violation of court orders.  These allegations led to a new Indictment

against him in January 2020.  Case No. 3:20-cr-11, Doc. No. 1.  On July 31, 2020, the Court

ordered Case Nos. 3:20-cr-11 and 3:18-cr-54 consolidated for trial.[2]  Doc. No. 330.

Following a series of continuances sought by Steven Pinto,[3] the Court eventually set trial

in his cases for February 23, 2021.  Doc. No. 316.  At a status conference on November 19, 2020,

the Government moved to continue the trial due to logistical and public health concerns brought

on by the COVID-19 pandemic.  Doc. No. 349.  Counsel for Steven Pinto[4] expressed willingness

to proceed with trial on February 23, 2021 but declined to oppose the Government's continuance

motion.  See id.  The Court granted the continuance and reset trial for June 8, 2021.  Doc. No. 350.

Steven Pinto tendered a signed waiver of speedy trial rights on December 21, 2020.  Case No.

3:20-cr-11, Doc. No. 21.

As Steven Pinto's cases progressed, the Government pursued Berry and Nguyen's

extraditions from Canada.  To that end, on December 8, 2020, an attorney for the Government sent

an email informing the Court and Steven Pinto's counsel that the Canadian Minister of Justice had

authorized the extraditions.  The email also indicated that three additional Defendants in Case No.

3:17-cr-206 (Marie Um, Vannek Um, and Linda Van[5]) were in the final stages of extradition

proceedings.  The email explained that the Government intended to move for joinder of those

Defendants with Steven Pinto for trial.

Berry and Nguyen arrived in the United States on January 6, 2021 and appeared for

arraignment the next day.  Case No. 3:17-cr-206, Doc. Nos. 172, 176.  Because several

---

[2] The order for joinder preceded Jose and Eugenia Pinto's indictments in Case No. 3:20-cr-11.

[3] The Court granted four continuance motions filed by Steven Pinto.  Doc. Nos. 98, 226, 299, 316.
He submitted three corresponding speedy trial waivers.  Doc. Nos. 169-1, 291, 321.

[4] David Cooper originally represented Steven Pinto.  Doc. No. 25.  Cooper later withdrew.  Doc.
No. 281.  Henry Brennan assumed the representation on May 17, 2019.  Doc. No. 283.

[5] The Government dismissed the Superseding Indictment against Linda Van on January 25, 2021.
Case No. 3:17-cr-206, Doc. No. 188.

codefendants have yet to appear, the Court has not established a trial date for their case.  In reaction to the potential for joinder, Steven Pinto moved for verification of his trial date on January 8, 2021. Doc. No. 354.

Running on another parallel track, law enforcement executed a search warrant in February 2020 at the Rhode Island residence of Jose and Eugenia Pinto—Steven Pinto's parents.  As a result of the search, law enforcement seized $490,700 in cash from behind a wall in their basement.  The Government believes that the seized currency derives from Steven Pinto's involvement in the fentanyl trafficking conspiracy.  Jose and Eugenia Pinto allegedly consented to hide the drug proceeds in an effort to conceal the money from law enforcement.

On January 15, 2021, the grand jury returned a Second Superseding Indictment in Case No. 3:20-cr-11 that appends Jose and Eugenia Pinto as Defendants.  Case No. 3:20-cr-11, Doc. No. 32.  The first five counts charge Steven Pinto individually with four criminal contempt offenses and possession of contraband in a correctional facility.  Counts Six and Seven charge Steven, Jose, and Eugenia Pinto with obstruction of justice and tampering with evidence.  All the charges relate to attempted hindrance of the investigation and prosecution of Case No. 3:18-cr-54. Jose and Eugenia Pinto appeared for arraignment on February 25, 2021.  Case No. 3:20-cr-11, Doc. Nos. 69, 70.

## II.   <u>DISCUSSION</u>

In the Government's view, joining the Pintos with Berry and Nguyen for trial is warranted because their indictments allege criminal conduct arising from the same conspiracy.  The Government additionally highlights judicial efficiency considerations, asserting that the already sizeable number of witnesses and exhibits will substantially overlap between Defendants. Resisting joinder, Steven Pinto denies participating in the same conspiracy with either Berry or

Nguyen.  He also contends that prejudice will result from the introduction of evidence pertaining to overdose deaths that predated his alleged fentanyl trafficking activities.  Finally, he argues that joinder portends a likely violation of his Sixth Amendment right to a speedy trial.  Meanwhile, Berry opposes joinder as premature.  Berry's counsel points out that he only recently received the voluminous discovery and thus lacks a sufficient basis to determine whether joinder is appropriate.

### A.   Joinder

A district court may "order that separate cases be tried together as though brought in a single indictment" so long as "all offenses and all defendants could have been joined in a single indictment."  Fed. R. Crim. P. 13.  Joinder of defendants is appropriate "if they allegedly participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b); see also United States v. Davis, 534 F.3d 903, 916 (8th Cir. 2008).  "Generally, the 'same series of acts or transactions' means acts or transactions that are pursuant to a common plan or a common scheme."  United States v. Wadena, 152 F.3d 831, 848 (8th Cir. 1998).  Under that formulation, "rarely, if ever, will it be improper for co-conspirators to be tried together."  United States v. Ali, 799 F.3d 1008, 1023 (8th Cir. 2015) (cleaned up).  The decision to consolidate separate cases for trial is discretionary.  United States v. Knowles, 572 F.2d 267, 270 (10th Cir. 1978); United States v. Haygood, 502 F.2d 166, 169 n.5 (7th Cir. 1974).

In this instance, the Second Superseding Indictment against Steven Pinto in Case No. 3:18-cr-54 overtly alleges that he conspired with the Defendants in Case No. 3:17-cr-206—Berry and Nguyen among them—to distribute fentanyl and fentanyl analogues.  The charging document also identifies Berry as an organizer and leader of the conspiracy.  And the charges in Case No. 3:20-cr-11 all relate to conduct aimed at inhibiting the investigation and prosecution of the same

conspiracy.  As a result, the Pintos allegedly participated in the same series of acts or transactions as Berry and Nguyen.

Steven Pinto attempts to defeat joinder by portraying the Second Superseding Indictment as inaccurate.  But a district court must accept the allegations in an indictment as true when considering a joinder motion.  United States v. Massa, 470 F.2d 629, 644 (8th Cir. 1984), overruled on other grounds by United States v. Inadi, 475 U.S. 387 (1986).  The relevant charging documents allege a unified conspiracy in which Steven Pinto, Berry, and Nguyen each participated.

Even if the allegations were not entitled to the presumption of veracity, Steven Pinto's assertion that the charging documents set forth multiple distinct conspiracies would still run into a wall of precedent.  "Multiple groups and the performance of separate crimes or acts do not rule out the possibility that one overall conspiracy exists."  United States v. Roark, 924 F.2d 1426, 1429 (8th Cir. 1991) (citations omitted).  A member of a conspiracy "does not have to be aware of the existence of all other conspirators or all the details of the conspiracy."  United States v. Sdoulam, 398 F.3d 981, 991 (8th Cir. 2005) (quoting United States v. Watts, 950 F.2d 508, 512 (8th Cir. 1991)).  Although Steven Pinto denies directly interacting with Berry and Nguyen, the possibility remains that they participated in the same conspiracy.  In the end, "whether a single conspiracy or multiple conspiracies existed is a question for the jury."  United States v. Adipietro, 983 F.2d 1468, 1475 (8th Cir. 1993) (citation omitted).  Accordingly, joinder is facially proper.

**B.    Prejudice**

Even so, that joinder is facially proper is not dispositive.  That is because Rule 14(a) of the Federal Rules of Criminal Procedure "vests the district court with authority to order severance if consolidation for trial appears to prejudice the government or a defendant."  United States v. Beckman, 787 F.3d 466, 491 (8th Cir. 2015).  Prejudice precludes otherwise valid joinder "only if

7

there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993).

At the outset, Steven Pinto maintains that joinder will expose him to inflammatory evidence of overdose deaths that occurred prior to his purported involvement in the conspiracy. "Mere disparity of evidence against codefendants or the alleged prejudicial spillover effect of evidence against a codefendant are not grounds for severance absent a showing that the jury will be unable to compartmentalize the evidence against each individual defendant." United States v. Kime, 99 F.3d 870, 880 (8th Cir. 1996) (citing United States v. O'Meara, 895 1216, 1219 (8th Cir. 1990)). At a joint trial, the Court would instruct the jury to consider the evidence separately for each offense and each Defendant, thereby diminishing the risk of prejudice. See United States v. Flores, 362 F.3d 1030, 1042 (8th Cir. 2004) (finding that cautionary jury instructions sufficiently minimized prejudice from disparity of evidence between codefendants); United States v. Mathison, 157 F.3d 541, 546 (8th Cir. 1998) (same). Standing alone, the possibility of disparate evidence against Steven Pinto, Berry, and Nguyen is no bar to joinder.

However, Steven Pinto also contends that joinder will precipitate a violation of his right to a speedy trial. Severance is justified where necessary to safeguard a defendant's speedy trial rights. United States v. Phillips, 482 F.2d 191, 195 (8th Cir. 1973). The Sixth Amendment declares, "In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. The constitutional speedy trial right "attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." United States v. Williams, 557 F.3d 943, 948 (8th Cir. 2009) (citations omitted). A Sixth Amendment speedy trial challenge requires a court to "engage in a difficult and sensitive balancing process." Barker v. Wingo, 407

U.S. 514, 533 (1972).  Four factors control: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant.  Id. at 530.  No one factor is "a necessary or sufficient condition" to establish a violation.  Id. at 533.

The initial length of delay factor is twofold.  First, the length of delay must exceed a presumptively prejudicial threshold before consideration of the four Barker factors is warranted at all.  United States v. Summage, 575 F.3d 864, 875 (8th Cir. 2009).  Law enforcement arrested Steven Pinto almost three years ago.  That is more than enough to establish presumptive prejudice. See Doggett v. United States, 505 U.S. 647, 652 n.1 (1992) (noting that "the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year"); United States v. Sims, 847 F.3d 630, 635 (8th Cir. 2017) (concluding that approximately 22-month delay was presumptively prejudicial).

Second, the length of delay weighs on the Barker analysis in the main.  See United States v. Mallett, 751 F.3d 907, 914 (8th Cir. 2014).  With trial now scheduled to commence on June 8, 2021, the interval between arrest and trial will approach 39 months.  Such a delay is "uncommonly long" and grazes the outermost limits previously deemed reasonable by the Eighth Circuit Court of Appeals.  United States v. Aldaco, 477 F.3d 1008, 1019-20 (8th Cir. 2007) (upholding 40-month delay); see also United States v. Walker, 92 F.3d 714, 717 (8th Cir. 1996) (upholding 38-month delay).  Thus, the length of delay weighs in Steven Pinto's favor.

Addressing the second factor, the reason for the delay cuts both ways.  So far, nothing indicates that the Government has negligently or intentionally delayed prosecution.  See Barker, 407 U.S. at 531.  Instead, most of the delay owes to the combined effect of Steven Pinto's decision to switch attorneys and the additional charges lodged against him in early 2020.  See United States v. Zavesky, 839 F.3d 688, 695 (8th Cir. 2016) (finding delay to obtain new counsel attributable to

defendant); <u>Young v. United States</u>, 953 F. Supp. 2d 1049, 1063 (D.S.D. 2013) (deeming defendant responsible for delay from separate criminal charges).  Collectively, Steven Pinto's attorneys moved for continuances on four occasions to review discovery and prepare for trial.  <u>See United States v. Titlbach</u>, 339 F.3d 692, 699 (8th Cir. 2003) (explaining that delays from continuances sought by defense counsel remain attributable to the defendant).  The Government, on the other hand, moved for just one continuance predicated on witness and public health complications posed by the COVID-19 pandemic.  Steven Pinto elected not to oppose that motion and submitted a waiver of speedy trial rights through the current trial date.  At this juncture, Steven Pinto is "more to blame" for the delay than the Government.  <u>Doggett</u>, 505 U.S. at 651.

Yet that is only half the equation.  The Court must also consider the prospective implications of joinder on Steven Pinto's speedy trial rights.  In <u>United States v. Chantharath</u>, the district court ordered severance of two defendants in a "complex drug conspiracy" case based on probable impending speedy trial violations.  No. CR. 10-40004, 2011 WL 4833048, at *2-4 (D.S.D. Oct. 12, 2011).  Both defendants had been in pretrial custody for more than 18 months. <u>Id.</u> at *2.  The prosecution sought a continuance to allow for a joint trial with a recently indicted codefendant who had yet to arrive because of delays in transporting him to the district.  <u>Id.</u>  Two other codefendants remained at large.  <u>Id.</u> at *1.  Analyzing the second <u>Barker</u> factor, the district court explained that the two defendants "played no role in the delay of transporting" the absent codefendant.  <u>Id.</u> at *4.  The court also emphasized that "the government cannot specify when [the in-transit codefendant] will be ready for trial or when the two remaining codefendants will be arrested."  <u>Id.</u>  Consequently, the court determined that the reason for delay counseled toward severance.  <u>Id.</u>

Similar circumstances exist here.  If joinder is permitted, the scope and complexity of the conspiracy allegations virtually guarantee that Berry and Nguyen—who each obtained counsel less than two month ago—will move for continuances.  Indeed, Berry's counsel attested that the sheer volume of discovery made even the assessment of joinder impossible so soon after appointment.  By early June, the prospect of either Berry or Nguyen having adequate time to fully review discovery and prepare for a potential six-week jury trial with as many as 150 witnesses is doubtful.  What is more, the extradition of at least two other Defendants from Canada is still in the works.  The Government intends to seek consolidation of those Defendants for trial too.  When they will arrive in the United States remains unknown.  With these considerations in mind, joinder will inevitably result in further delay.

To be clear, the Court in no way imputes negligence or bad faith conduct to the Government's efforts to secure the Canadian Defendants' extraditions.  Nonetheless, "the ultimate responsibility" for neutral reasons for delay arising from the ordinary incidents of the criminal justice process "must rest with the government rather than with the defendant."  Vermont v. Brillon, 556 U.S. 81, 90 (2009) (quoting Barker, 407 U.S. at 531).  Although Steven Pinto shoulders responsibility for much of the delay up to this point, the likelihood of severe delay from joinder tips the second factor his way.

Turning to the third factor, a defendant's "assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Williams, 557 F.3d at 949 (quoting Barker, 407 U.S. at 531-32).  Here, Steven Pinto adequately asserted his right to a speedy trial.  The Government notified the Court and his counsel of the extraditions and potential for joinder on December 8, 2020.  Another email followed on January 4, 2021 indicating that Berry and Nguyen would imminently arrive in the United States.  Steven

Pinto moved to verify the trial date four days later, referencing his extended pretrial incarceration and trial preparation efforts.  In addition, his February 2, 2021 response to the motion for joinder explicitly invoked his right to a speedy trial.  The third <u>Barker</u> factor is accordingly satisfied.

For the last factor, "the degree of prejudice required, if any, depends on the defendant's showing under the preceding Barker factors."  <u>Sims</u>, 847 F.3d at 636 (citing <u>United States v. Erenas-Luna</u>, 560 F.3d 772, 780 (8th Cir. 2009)).  When examining prejudice, courts look to the three primary interests vindicated by the speedy trial right: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired.  <u>Barker</u>, 407 U.S. at 532.

Steven Pinto has been in custody for nearly three years on what stand today as unproven charges.  Trial is currently set for almost 39 months from the date of his arrest.  Protracted pretrial incarceration of that magnitude unquestionably creates prejudice—particularly because Steven Pinto has consistently expressed an intent to exercise his constitutional right to a jury trial.  Joinder now raises the palpable threat of his interminable pretrial incarceration.  Our Constitution is loath to tolerate such an outcome.

Heightened anxiety is present too.  "Anxiety . . . is likely the weakest interest served" by the speedy trial right.  <u>United States v. Shepard</u>, 462 F.3d 847, 864-65 (8th Cir. 2006) (citing <u>Barker</u>, 407 U.S. at 534).  Even so, Steven Pinto's circumstances cause unique opportunities for anxiety.  He faces mandatory life imprisonment if convicted of the drug conspiracy offense resulting in serious bodily injury and death.  The specter of such a serious charge looming for more than three years increases anxiety.  Moreover, the Government has now charged his parents with crimes stemming from the drug trafficking allegations against him.  Additional delay would

therefore weigh "particularly heavily on him in specific circumstances." Morris v. Wyrick, 516 F.2d 1387, 1391 (8th Cir. 1975).

Though unclear, further delay may impact Steven Pinto's defense as well. The Government continues to investigate and pursue participants in the alleged conspiracy who might later offer evidence against him. Allowing Steven Pinto's indefinite pretrial incarceration while the Government continues to collect purported coconspirators and other witnesses exceeds the bounds of fairness at some point. As another source of potential impairment, Steven Pinto's fentanyl trafficking activities allegedly began nearly six years ago. More delay increases the odds that witnesses will recall events inaccurately. See Doggett, 505 U.S. at 647 (recognizing "that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify"). All told, the fourth factor tilts in Steven Pinto's favor.

In opposition, the Government suggests designating the putative consolidated cases as complex to allay any speedy trial concerns. When weighing a continuance under the Speedy Trial Act, a district court may assess "[w]hether the case is so unusual or complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or the trial itself." 18 U.S.C. § 3161(h)(7)(B)(ii). But that is no silver bullet. In agreeing to the new date, both parties already confirmed they would be prepared for Steven Pinto's trial on June 8, 2021. Furthermore, the complexity of his case was evident long before Berry and Nguyen's arrival in the United States. As a mere pretext for joinder, a complex case designation at this late stage would rest on an unstable foundation.

Nor do the Government's efficiency arguments overcome the prejudice inherent in additional delay. The Court acknowledges the lengthy trial estimates and substantial evidentiary

overlap for these Defendants.  Yet whether Berry, Nguyen, or any other Defendant in extradition proceedings will ever invoke the right to a jury trial remains uncertain.  Holding Steven Pinto in perpetual pretrial custody while newly joined Defendants reach their own trial decisions (which may take many months or even years) will ultimately impede rather than facilitate the efficient administration of justice.  As such, the Court rejects the Government's invitations to set aside Steven Pinto's speedy trial concerns in favor of joinder.

Careful consideration of the <u>Barker</u> factors reveals that joinder will likely result in the infringement of Steven Pinto's Sixth Amendment right to a speedy trial.  Accordingly, the Court declines to join the Pintos with Berry and Nguyen for trial.  As for the motion to confirm the trial date, the Court believes that further continuances sought by anyone other than Steven Pinto himself will seriously jeopardize his constitutional right to a speedy trial.  The Court therefore intends for trial to commence on June 8, 2021.

## III.   <u>CONCLUSION</u>

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, the Government's motion for joinder is **DENIED**.  Steven Pinto's motion to verify the June 8, 2021 trial date is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 5th day of March, 2021.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court

14